Bandstra, J.
 

 Defendant was convicted of first-degree felony murder,
 
 [1]
 
 MCL 750.316(l)(b); MSA 28.548(l)(b), following the death of his elderly aunt. On appeal, defendant does not argue that the trial court incorrectly concluded that defendant struck the blows that ultimately resulted in the death. Instead, defendant argues that the evidence was insufficient to find him guilty of homicide because “the victim’s death was caused by the intervening cause of removal from life support systems, which were required to sustain the life of the victim.” We reject this argument and affirm defendant’s convictions.
 

 When reviewing a claim of insufficient evidence following a bench trial, we view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt.
 
 People v Hutner,
 
 209 Mich App 280, 282; 530 NW2d 174 (1995). Considered in a light most favorable to the prosecution, the facts underlying this appeal are as follows. During the evening of March 10, 1996, defendant struck his seventy-nine-year-old aunt about the head during the course of a robbery. The next morning, the victim’s niece became concerned that she could not reach the victim by telephone and forced her way into the victim’s house, where she found the victim beaten and lying on the floor. The only signs of life she observed were
 
 *348
 
 that the victim’s body was warm and that the victim’s hand would twitch when the niece called her name. The victim was taken to St. Joseph Mercy Hospital, Ann Arbor, where she was placed on a respirator.
 

 Dr. Richard Pomerantz, attending surgeon to the victim, testified at trial that a number of factors are evaluated to develop a prognosis for patients with severe brain injuries, including the Glasgow Coma Scale. Patients are rated on the Glasgow Coma Scale on the basis of three easily observable responses: opening the eyes, responding verbally, and responding with movement. The lowest score on the scale is a three, indicating no eye opening, no verbal response, and no muscle activity. While the victim in this case was on the respirator and being monitored, she scored from three to five on the Glasgow Coma Scale. This indicated severe brain injury. Dr. Pomerantz testified that, during this time, the victim showed no sign of neurological recovery or improvement. Dr. Pomerantz further opined that the victim’s chance of surviving her injury and leaving the hospital alive was less than ten percent. Her chance of a “functional recovery,” including being awake and aware of her surroundings, was zero. On the basis of these assessments, the team of medical professionals, along with the family members, determined that “we would allow her to breathe without the assistance of a ventilator and if she should stop breathing, that we would not resuscitate her.” The victim was taken off the respirator at 3:15 P.M. on March 14, 1996, almost four days after she was assaulted.
 

 Forensic pathologist Dr. Michael Caplan, a deputy medical examiner for Washtenaw County, testified that he investigated the death of the victim and deter
 
 *349
 
 mined the cause to be complications of blunt impacts to the head and face. During his autopsy, Dr. Caplan discovered multiple tears and bruises in the deep parts of the brain. He testified that these injuries were irreversible:
 

 [Tjhese injuries are what we call primary injuries of the brain. These are injuries that cause direct, physical disruption of the nerve fibers or the axons. Injuries that are potentially reversible would be secondary effects such as swelling of the brain, the accumulation of large amounts of blood within the brain which could be evacuated or which could be controlled with either drugs or hyperintelation or other things. But primary injuries of the brain are not reversible because the brain is unable to heal as other organs are. The brain does not have the ability to regenerate its normal tissues.
 

 On the basis of the autopsy, Dr. Caplan testified that he was in agreement with the hospital personnel in their opinion that “there was no meaningful chance for recovery. While she may have been able to be maintained artificially on a respirator, there would have not been any reasonable expectation of consciousness or any sort of meaningful life despite being artificially maintained on a ventilator.” Dr. Caplan further testified that, when the victim was removed from the ventilator, the brain stem was unable to sustain enough independent breathing to allow oxygen to be delivered to the vital organs, including the heart. As a result, at 10:48 P.M. on March 14, the victim suffered a cardiac arrest.
 

 To warrant a conviction of homicide, death must be the natural and probable consequence of the unlawful act and not the result of an independent intervening cause in which the accused did not participate and
 
 *350
 
 which he could not foresee.
 
 People v Clark,
 
 171 Mich App 656, 659; 431 NW2d 88 (1988). Defendant argues that the decision to remove the victim from the respirator was such an “independent intervening cause” and that his homicide conviction was thus not supported by sufficient evidence. We disagree.
 

 The Determination of Death Act provides that an individual who has sustained irreversible cessation of circulatory and respiratory functions “is dead.” MCL 333.1033(l)(a); MSA 14.15(1033)(l)(a);
 
 People v Selwa,
 
 214 Mich App 451, 460; 543 NW2d 321 (1995). A determination of death under this definition “shall be made in accordance with accepted medical standards.” MCL 333.1033(2); MSA 14.15(1033)(2). Because of the injuries to her brain, the victim had sustained a cessation of circulatory and respiratory functions.
 
 [2]
 
 All medical personnel involved testified that there was no sign of improvement or reasonable chance of recovery. A rational trier of fact could have found that the victim came within the statutory definition of being “dead” before being removed from the ventilator.
 
 [3]
 
 Accordingly, a rational trier of fact could have concluded that the later decision to remove the victim from the respirator was not an intervening cause of death.
 

 Alternatively, even if the trier of fact did not conclude that the victim was legally dead before being removed from the respirator, that would not mean the
 
 *351
 
 decision to remove artificial respiration was an intervening cause of death absolving defendant of liability. We agree with the statement in
 
 In re Rosebush,
 
 195 Mich App 675, 692; 491 NW2d 633 (1992), that “the implementation of a decision to terminate life-support treatment is not the cause of the patient’s subsequent death. Instead, the discontinuance of life-support measures merely allows the patient’s injury or illness to take its natural and inevitable course.” See, also,
 
 People v Vanderford,
 
 77 Mich App 370, 372-373; 258 NW2d 502 (1977). The victim’s death was the “natural and inevitable” result of the injuries inflicted by defendant, notwithstanding the temporary postponement of that result through artificial respiration.
 

 Defendant argues that because Dr. Pomerantz testified the victim had a ten percent chance of leaving the hospital alive, there was not proof beyond a reasonable doubt that the victim’s death resulted from the injuries inflicted. This argument is illogical. There was no testimony that the victim had a ten percent chance of making any improvement if artificial respiration continued. The testimony was directly to the opposite effect—that further respiration would not facilitate any recovery. Instead, Dr. Pomerantz’ testimony was that, if artificial respiration was terminated, the victim had a ten percent chance of leaving the hospital alive. Had the victim done so, of course, defendant could not be convicted of a homicide. However, unfortunately for defendant, the victim died, and the trier of fact rationally concluded that the death was a result of the injuries defendant inflicted.
 

 We affirm.
 

 [1]
 

 Defendant’s conviction of second-degree murder, MCL 750.317; MSA 28.549, was vacated by the trial court. Because the parties have not raised the issue on appeal, we express no opinion regarding whether the vacation of the second-degree murder conviction was appropriate. See
 
 People v Bigelow,
 
 229 Mich App 218; 581 NW2d 744 (1998).
 

 [2]
 

 This conclusion is not altered by the fact that these functions were artificially accomplished by the respiratory machinery.
 

 [3]
 

 The applicability of the statute was not argued during the trial. Defendant did not raise the “intervening cause” issue in any manner below, but argued instead that he did not have the requisite intent for a homicide.